Arnold R. JAGO, Superintendent,
Petitioner-Appellant,

v.

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF OHIO,
EASTERN DIVISION AT CLEVE-
LAND, and Harllel B. Jones, Respon-
dents-Appellees.

No. 77–3333.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 7, 1977.

Decided Feb. 2, 1978.

William J. Brown, Atty. Gen. of Ohio, Columbus, Ohio, for petitioner-appellant.

Gary T. Kelder, Syracuse, N. Y., Gordon S. Friedman, Cleveland, Ohio, Richard L. Aynes, Akron, Ohio, for respondents-appellees.

Before CELEBREZZE and ENGEL, Circuit Judges, and GRAY, Senior District Judge.*

ENGEL, Circuit Judge.

The Superintendent of the Southern Ohio Correctional Facility has petitioned this court for a writ of mandamus to compel the respondent district judge to withdraw a grant of bail to Harllel Jones, the successful petitioner for a writ of habeas corpus in the district court.[1] The federal habeas corpus petition challenged the validity of a 1972 conviction in an Ohio Court of Common Pleas for second degree murder and shooting with intent to kill or wound.

Judgment in the habeas corpus proceeding was entered on February 10, 1977, granting the writ and ordering Jones' release unless the state began a new trial within 90 days. On February 15 Jones applied for bail, and on March 2 petitioner Jago filed a notice of appeal and moved for a stay of execution of the judgment. The district court denied both the request for bail and the motion for a stay on March 7. Jago sought in this court a stay of the judgment, which was granted on April 19. Upon a renewed application for bail, the district court on June 24, 1977 ordered Jones released pending the appeal on the condition that he post bail in the amount of $10,000, ten percent deposit.[2]

In ordering Jones' release, District Judge Frank J. Battisti noted that the 90-day period for a new trial had long since expired and that the appellate process promised to last several more months. He concluded:

Under these circumstances, continued imprisonment of the petitioner by the state can no longer be justified. The petitioner is possessed of a final judgment that his trial did not meet constitutional standards of fairness and is by now entitled to release on bail while the state pursues its appeal.

The state asserts that after he had originally denied bail and a notice of appeal had been filed, the district judge was without any power to act. At first blush this position appears to have much merit, especially in the light of the express language of Rule 23(d), Federal Rules of Appellate Procedure:

An initial order respecting the custody or enlargement of the prisoner and any recognizance or surety taken, shall govern review in the court of appeals and in the Supreme Court unless for special reasons shown to the court of appeals or to the Supreme Court, or to a judge or justice of either court, the order shall be modified, or an independent order respecting custody, enlargement or surety shall be made.

Relying upon a literal reading of the rule, the state argues that the district judge's "initial" order denied release and thus must govern Jones' custody during appeal unless changed by the court of appeals for "special reasons."

Furthermore, the state relies upon the general proposition that the filing of a notice of appeal divests the district court of jurisdiction and transfers such jurisdiction to the court of appeals, citing the following Sixth Circuit cases: *Oak Construction Co. v. Huron Cement Co.,* 475 F.2d 1220 (6th Cir. 1973); *Hogg v. United States,* 411 F.2d 578 (6th Cir. 1969); *Keohane v. Swarco, Inc.,* 320 F.2d 429 (6th Cir. 1963); *United States v. Frank B. Killian Co.,* 269 F.2d 491 (6th

---

* Hon. Frank Gray, Jr., Senior District Judge, United States District Court for the Middle District of Tennessee, sitting by designation.

1. The petitioner's application also sought a writ of prohibition. We need not consider that request, as petitioner concedes that it "ostensibly became moot" when Harllel Jones was actually released on June 24, 1977 pursuant to the district court's order.

2. The petitioner posted the required bail bond and has been released during the state's appeal of the judgment in the habeas action.

Cir. 1959); *Walker v. Felmont Oil Corp.,* 262 F.2d 163 (6th Cir. 1958), *cert. denied,* 361 U.S. 840, 80 S.Ct. 61, 4 L.Ed.2d 78 (1959). The order granting bail was entered after the notice of appeal had been filed and the case docketed in this court. Thus the state contends that the district court acted without jurisdiction. The earlier order denying bail, while also entered after the appeal was noted, is not subject to this defect, it urges, because an application had been made prior to the filing of the notice. The state also correctly points out that habeas corpus petitioners are not subject to the provisions of Rule 9, Federal Rules of Appellate Procedure, pertaining to admission to bail of defendants in direct criminal appeals.

In considering similar arguments in the district court, Judge Battisti concluded:

The respondent interprets this rule [23(d)] to mean that modification of an initial order respecting custody is limited to the appellate courts. But, clearly, this is a misreading of the provision. Though the rule indicates the truism that on review in the court of appeals or the Supreme Court an order can only be modified by a judge or justice of that court, it neither states nor implies that the district court is divested of jurisdiction to modify or reconsider its orders concerning custody. In fact this rule states a limitation on the discretion of appellate courts to modify initial orders and, thereby, reemphasizes the responsibility of the district court to determine the propriety of release pending appeal. According to this rule, absent "special reasons," the appellate courts are, in fact, to be governed by the rulings made by the lower courts regarding custody. Hence, this court not only has jurisdiction to consider the petitioner's motion by virtue of Rule 23(c), but also has a special obligation to modify, if the circumstances require, an order which the court of appeals might otherwise consider binding by virtue of Rule 23(d).

Rule 23(c) states that a successful petitioner for habeas corpus "shall be enlarged" pending appeal, unless the court otherwise orders. After thorough review of the historical precedents to Rule 23(c), the Third Circuit Court of Appeals concluded in *United States ex rel. Thomas v. New Jersey,* 472 F.2d 735 (1973) that under Rule 23(c) there is "a very strong presumption that a petitioner holding a final judgment that his detention is unlawful should not be left in state custody" and, further, that the court should exercise its discretion to allow the state to retain custody only in "limited situations," *supra* at 743.

The issues raised by the superintendent's petition are ones of first impression in this circuit and have considerable practical importance in the administration of the law of habeas corpus in the federal courts. A consideration of the historical role of habeas corpus generally and of Rule 23 in particular persuades us that Judge Battisti retained the power to release Jones under the circumstances here.

Any consideration of the meaning of Rule 23 and of the retained authority of the district judge to enter orders affecting custody after filing of the notice of appeal must begin with the recognition that "[e]ssentially, the proceeding is unique. Habeas corpus practice in the federal courts has conformed with civil practice only in a general sense." *Harris v. Nelson,* 394 U.S. 286, 294, 89 S.Ct. 1082, 1087, 22 L.Ed.2d 281 (1969); *accord, Schlanger v. Seamans,* 401 U.S. 487, 490 n. 4, 91 S.Ct. 995, 28 L.Ed.2d 251 (1971).

While there may be a justifiable inclination to consider contemporary habeas corpus proceedings in federal court primarily as vehicles for the resolution of knotty constitutional issues, the writ is essentially a very physical one. This is its fundamental nature even today. Above all it deals with the issue of personal freedom from imposed restraints. In its most literal terms, a writ commands a custodian to bring the aggrieved party into the presence of the judge issuing the writ and at that time to justify the detention. Historically the judge then inquired into the custodian's reasons, and if he found them unlawful or inadequate, he

ordered the immediate release of the person so held and the matter was closed. Immediacy was and is its essence:

This is a high prerogative writ, and therefore by the common law issuing out of the court of the king's bench not only in term-time, but also during the vacation, by a *fiat* from the chief justice or any other of the judges, and running into all parts of the king's dominions: for the king is at all times entitled to have an account, why the liberty of any of his subjects is restrained, wherever that restraint may be inflicted.

3 W. Blackstone, Commentaries on the Laws of England 131 (E. Christian ed. 1822) (footnotes omitted).

It is true that in the great bulk of cases in the federal courts prisoners in state custody remain physically in the state institution while their petitions for release under the writ are processed through the district courts and any subsequent appeals. It is important to remember, however, that the prisoners in state correctional institutions are not the only potential beneficiaries of the writ or of the laws authorizing federal judges to issue it. The Supreme Court has commented, "It is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." *Jones v. Cunningham,* 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963).[3]

The underlying physical nature of habeas corpus proceedings has been well stated by Judge Hastie, concurring in *Johnston v. Marsh,* 227 F.2d 528, 532 (3rd Cir. 1955):

Unique procedure characterizes the administration of the remedy of habeas corpus. When a court with jurisdiction of the subject matter receives a petition for habeas corpus which is not inadequate on its face, normal procedure is to issue a writ of habeas corpus, ordering the person who is detaining the petitioner to bring him before the court for hearing

and decision whether he is unlawfully deprived of his liberty. The district court issued such an order here and in obedience thereto the state warden produced his prisoner.

At that juncture the body of the petitioner came under the lawful control of the district court. In legal contemplation that control continues pending decision whether to free the petitioner or to return him to state custody. During that period detention is by force of the writ of habeas corpus, and the antecedent detaining authority is superseded for the time being.

Normally, where the petitioner is a prisoner serving a sentence upon conviction of crime, the court before which he is brought by writ of habeas corpus directs the warden to hold him until the court can decide the case. But this procedure is not in derogation of the controlling concept that the body is being held pendente lite under authority and subject to order of the court which has issued the writ. Once this concept is recognized, it becomes clear that the particular interim disposition which the court makes of the body is a judicial function of that court to be discharged, absent any controlling statute, in the exercise of judicial discretion, all relevant circumstances considered. The court is under no ministerial duty to direct or permit the person who produces the petitioner to continue to hold him during this period.

*Johnston v. Marsh* typifies the problems concerning physical custody which must necessarily be faced in a very practical way by the habeas corpus judge where there is delay in reaching a disposition of the petitioner's case. In *Johnston* the petitioner was admitted to bail pending disposition on the merits by the district court, where it was shown that he was an advanced diabetic and was, under the conditions of confinement, rapidly progressing toward total blindness. The state prisoner thus required hospitalization, and the court conditioned

---

**3.** For examples of the variety of uses to which the writ has been put both in England and in the United States, see *Jones v. Cunningham, supra.*

the admission to bail upon his going to and remaining in a private hospital.

Judge Goodrich's opinion in *Johnston* traced to some extent the exercise of the authority to admit to bail in habeas corpus cases, pending decision on the merits, as recognized in England and in the United States:

> One of the inherent powers of the judiciary with regard to proceedings before it has been the admission of a prisoner to bail where, in the exercise of his discretion, the judge deems it advisable. It is clear that at common law courts had the inherent power to grant bail. See, e. g., *Queen v. Spilsbury,* [1898] 2 Q.B. 615, 620. This authority was exercised in habeas corpus cases pending decision on the merits. *In re Kaine,* 1852, 14 How. 103, 133, 55 U.S. 103, 133, 14 L.Ed. 345 (dissent); *Barth v. Clise,* 1870, 12 Wall. 400, 402, 79 U.S. 400, 402, 20 L.Ed. 393; 16 English & Empire Digest 268 (1923). Our Federal judiciary has consistently recognized that at common law this inherent power existed. See, e. g., *United States ex rel. Carapa v. Curran,* 2 Cir., 1924, 297 F. 946, 954, 36 A.L.R. 877; *United States v. Evans,* C.C., 1880, 2 F. 147, 152; *Ewing v. United States,* 6 Cir., 1917, 240 F. 241, 248. Yet whether Federal courts have this authority has been the subject of considerable controversy. The principal cases are compiled in *Principe v. Ault,* D.C.N.D. Ohio 1945, 62 F.Supp. 279, 281. On apparently the only occasion at which this question has been presented to it, the Supreme Court, in dicta, said that it was unwilling to hold that circuit courts do not have this inherent power. *Wright v. Henkel,* 1903, 190 U.S. 40, 63, 23 S.Ct. 781, 47 L.Ed. 948. We believe that the basic misconception in those decisions denying this authority lies in their view that since Federal courts have limited, statutory jurisdiction, their powers in proceedings involving this jurisdiction are necessarily limited and must be statutory. See *Principe v. Ault,* D.C.N.D.Ohio 1945, 62 F.Supp. 279, 282. This, as already indicated, is not our view of the matter. 227 F.2d at 531 (footnote omitted).

■ The general rule that an appeal to the circuit court deprives the district court of jurisdiction as to any matters involved in the appeal is neither "a creature of statute" nor "absolute in character." *Hoffman v. Beer Drivers & Salesmen's Local Union 888,* 536 F.2d 1268, 1276 (9th Cir. 1976). Contrary to the contention of the state, the question concerning physical custody of the defendant pending review does not affect the matters involved in the appeal itself. The habeas petitioner is not physically transferred to the appellate court, though the issues concerning his petition are presented there. The order from which the appeal is taken provided that because of a constitutional violation in his state court trial, the petitioner should be granted the writ unless the state retried him in ninety days. This decision did not in any way relate to or concern the matter of his custody pending the appeal, although his personal freedom was at issue in each instance. In this respect, the case is not unlike many others in which the district court has of necessity a retained power to act even though a judgment in the case may be the subject of a pending appeal. *See* 9 Moore's Federal Practice ¶ 203.11 at 734–35 (2d ed. 1975).

In *Hogg v. United States, supra,* we recognized that a district court continues to have jurisdiction to act in aid of the appeal as authorized under the federal rules. 411 F.2d at 580. Certainly if the physical welfare of the petitioner is the responsibility of the district court during the appeal and if the question of his custody does not affect the merits of the appeal itself, it is not unreasonable to believe that there is a retained power in the district court to aid the appeal by undertaking that responsibility, at least in the absence of its exercise by an appellate court. In *Hoffman v. Beer Drivers, supra,* the Ninth Circuit went so far as to permit the district court's alteration of a preliminary injunction in a labor dispute even though that very injunction was then

pending in the court of appeals. The court reasoned that because there was a continuing necessity to maintain a status quo in light of new facts which developed after the entry of the original order, the district court ought to be allowed to retain supervisory control as the circumstances dictated. 536 F.2d at 1276.

■■■ A similar responsibility for custody decisions is reserved in the district court for direct criminal appeals by the express provisions of Rule 9(b), Federal Rules of Appellate Procedure. Release pending an appeal must be first sought in the district court even after an appeal has been noted from the judgment of conviction. See 9 Moore's Federal Practice ¶ 209.01[2] at 1504, ¶ 209.06 at 1512 (2d ed. 1975).[4] We believe that a proper understanding of the history of Rule 23 supports a conclusion that it, also, preserves in the district judge authority to issue one or more orders regarding the custody or enlargement of a prisoner pending the review of the decision in the habeas corpus action. The district court does not lose his jurisdiction when an appeal is noted from the decision. However, on motion by a party, the court of appeals or a single judge of the court may modify any such order, or make an independent custody order, but only where "special reasons" are found to do so.

A good summary of the history of Rule 23, particularly subdivision (c) which is applicable in this case, is found in *United States ex rel. Thomas v. New Jersey,* 472 F.2d 735 (3rd Cir.), *cert. denied,* 414 U.S. 878, 94 S.Ct. 121, 38 L.Ed.2d 123 (1973). There the district court had granted a petition for a writ of habeas corpus to a state prisoner and ordered that if no appeal was taken by the state and no retrial was begun within 60 days, the petitioner was to be released. The order also stated that during the pending appeal the state county court was to entertain an application for bail by

the petitioner, which was to be fixed in a reasonable amount. The prisoner then applied to the state court which declined to entertain the application. Therefore the district court amended the initial order to provide that the prisoner would be released from custody on the posting of a bond of a designated amount with the state court. On appeal the Third Circuit held that it was improper for the district court to order a state trial court to admit the petitioner to bail and remanded the case to the district court for a hearing as to the amount of any bond which would be deposited in the federal court as a condition of release. Notwithstanding the language of Rule 23, the Third Circuit gave no indication that the district court was without power to modify the earlier order. It observed:

The equivalent of that Rule [Rule 23(c)] has been in effect since at least 1886. In that year the Supreme Court adopted a rule:

"*Ordered,* That the following regulations be established under section 765 of the Revised Statutes:

### RULE 34.
### CUSTODY OF PRISONERS ON HABEAS CORPUS.

\*  \*  \*  \*  \*  \*

3. Pending an appeal from the final decision of any court or judge discharging the prisoner, he shall be enlarged upon recognizance, with surety, for appearance to answer the judgment of the appellate court, except where, for special reasons, sureties ought not to be required." 117 U.S. 708.

This rule or its equivalent has been a part of the rules of the Supreme Court ever since. Its present equivalent is Rule 49(3) of the Supreme Court Rules. The reference to Revised Statutes, § 765 is to the statute which gave the Supreme Court general authority to regulate habeas corpus proceed-

---

4. We recognize that different policy considerations may govern in Rule 9 and Rule 23 situations. In direct appeals of federal criminal convictions the district judge has a superior ability to determine the propriety of bail, because he participated in the trial. In habeas corpus actions the district judge will often not be familiar with the prisoner, and his concern will simply be in determining interim custody arrangements while he reviews the petitioner's claims.

ings, including regulations "for the custody and appearance of the person alleged to be restrained of his or her liberty." Act of Feb. 5, 1867, ch. 28, § 1, 14 Stat. 385. Rule 34 became Rule 42 in the 1925 Rules, 266 U.S. 685, Rule 45 in the 1928 Rules, 275 U.S. 629, and Rule 49 in the 1954 Rules, 346 U.S. 999. Revised Statutes, § 765 was repealed in the 1948 revision of title 28, but the statutory authority for Rule 49(3) of the Supreme Court Rules cannot be doubted. *See* 28 U.S.C. § 2071 (rule making); 28 U.S.C. § 2101(f) (stays); 28 U.S.C. § 2251 (stays in habeas corpus cases); 28 U.S.C. § 1651 (all writs).

When in 1967 the Supreme Court promulgated the Federal Rules of Appellate Procedure, it included in Rule 23 a rule identical in language with its own Rule 49. Thus, Rule 23(c) is in direct succession from the original Supreme Court Rule 34(3) adopted in 1886. Even though until 1967 it appeared in the Supreme Court rules, at all times it has dealt with the duty of the district courts in habeas corpus cases. In 1886 the language requiring the enlargement of the successful habeas corpus petitioner was mandatory. The only discretion was in deciding whether a surety on his recognizance ought to be required. The mandatory language with respect to enlargement of the successful petitioner was carried forward until 1967. In that year, however, Rule 49(3) was revised to provide that the successful petitioner "shall be enlarged upon his recognizance, with or without surety, unless the court or justice or judge rendering the decision, or the court of appeals or this court, or a judge or justice of either court, shall otherwise order." The revised language was carried into Rule 23(c), Fed.R.App.P.

Thus from 1886 to 1967 a judge granting habeas corpus relief was under a flat mandate to enlarge the petitioner pending appeal. In *United States ex rel. Collins v. Claudy,* 204 F.2d 624 (3rd Cir. 1953) this court, reversing the denial of a habeas corpus petition and ordering that the writ issue, recognized that the state might seek a reversal in the Supreme Court. It held, therefore,

". . . we will entertain a request for the enlargement of the petitioner on bail pending final disposition of this case if any further proceedings shall postpone the issuance of the mandate of this court in normal course. See our Rule 15(3); Supreme Court Rule 45(3)." *Id.* at 630.

Since 1967 an order such as was entered in the *Collins* case would not be mandatory. But it is clear from the history of the rule prior to the 1967 change that there is still a very strong presumption that a petitioner holding a final judgment that his detention is unlawful should not be left in state custody. The 1967 change was not intended to adopt a general rule in favor of custody pending appeal, but only to substitute discretion, to be exercised in limited situations, for what was formerly a mandatory release requirement. *See* E. Bosky and E. Gressman, The 1967 Changes in the Supreme Court's Rules, 42 F.R.D. 139, 161 (1967). There is no question, then, that

the district court had the power to order Thomas' enlargement from state custody pending the state's appeal.

472 F.2d at 742–43 (footnote omitted).

The Supreme Court rule which governed release of prisoners pending appeal in habeas corpus cases between 1954 and 1967 was more capable of the construction sought here by the state than the present rule. Rule 49(3) of the Supreme Court Rules during that period stated:

3. Pending review of a decision discharging a prisoner on habeas corpus, he shall be enlarged upon recognizance, with surety, for his appearance to answer and abide by the judgment in the appellate proceeding; and if in the opinion of the *court in which the case is pending,* or of a judge or justice thereof, surety ought not to be required the personal recognizance of the prisoner shall suffice.

346 U.S. at 1000 (emphasis added). Subsection 5 of the same rule indicated that the "court in which the case is pending" meant the appellate court, after a notice of appeal had been filed:

5. This rule applies only to cases arising or pending in courts of the United States. For the purpose of this rule, a case is pending in the court possessed of the record until a notice of appeal or a petition for writ of certiorari has been filed, or until the time for such filing has expired, whichever is earlier; *and is pending on review in the appellate court after the notice of appeal* or the petition for writ of certiorari *has been filed.*

*Id.* (emphasis added). Thus, in *Lewis v. Henderson,* 356 F.2d 105 (6th Cir. 1966), our circuit tacitly indicated agreement with a district court determination that it was without jurisdiction under Rule 49(5) to release the petitioner on recognizance pending appeal after the notice of appeal had been filed. *See also Hash v. Henderson,* 262 F.Supp. 1016 (E.D.Ark.), *aff'd* 385 F.2d 475 (8th Cir. 1967).

A contrary result, however, was reached by the Fifth Circuit in *Jimenez v. Aristiguieta,* 314 F.2d 649 (5th Cir. 1963), under this earlier version of the rule. There a former chief executive of Venezuela contested a district court order revoking bail on the same day the Fifth Circuit affirmed the district court's order dismissing a habeas corpus petition. While observing that the order of revocation was in strict accordance with the original order of the district court and came after the appellate court had provided in its decision that the mandate was to be issued forthwith, the court of appeals did not hesitate to acknowledge the continuing authority of the district court to address questions concerning the petitioner's custody pending appeal and noted with approval numerous necessary modifications of the first order which had been entered by the district court during the process of the appeal. 314 F.2d at 651–52.

Other decisions appear, at least by inference, to have recognized the authority in the district court to enter a custody order after an appeal has been noted. *E. g., Aronson v. May,* 85 S.Ct. 3, 13 L.Ed.2d 6 (Douglas, Circuit Justice, 1964); *United States ex rel. Barnwell v. Rundle,* 461 F.2d

768 (3rd Cir. 1972); *Byrd v. Smith,* 407 F.2d 363 (5th Cir. 1969); *O'Brien v. Lindsey,* 202 F.2d 418 (1st Cir. 1953); *United States ex rel. Paetau v. Watkins,* 164 F.2d 457 (2d Cir. 1947); *York ex rel. Davidescu v. Nicolls,* 159 F.2d 147 (1st Cir. 1947); *Smith v. Caldwell,* 339 F.Supp. 215 (S.D.Ga.) *aff'd mem.,* 458 F.2d 160 (5th Cir. 1972). *See* R. Stern & E. Gressman, Supreme Court Practice § 17.15 at 563 (4th ed. 1969). Similarly, other cases have implicitly indicated that the district court may enter more than one order concerning a prisoner's custody. *Aronson v. May, supra; United States ex rel. Kwong Hai Chew v. Colding,* 105 F.Supp. 857 (E.D.N.Y.1952).

The ultimate question which will be decided in this court's ruling on the merits of the habeas corpus appeal will be Jones' freedom, and while in a very real sense the district court's June 24 order achieves the same immediate but tentative result, we do not see admission to bail as interfering with the appellate court's power of review. In any event we believe that the application of any generalized rule must yield to the unique nature of habeas corpus proceedings. In this regard we agree again with Judge Goodrich in *Johnston v. Marsh, supra,* 227 F.2d at 530:

> We think the basis of the judge's authority in this case is the fact that there is a prisoner before him over whom he has jurisdiction and where his power to act judicially is expressly conferred by statute.

(footnotes omitted).

The suggestion by the district judge in his opinion that Rule 23 states a "limitation on the discretion of appellate courts to modify initial orders" rather than a limitation on the power of the district court to issue them has considerable merit and is a view which was recognized in *Jimenez v. Aristiguieta, supra,* 314 F.2d at 652.

■ Given this history and the express limitation upon the powers of Congress contained in Article I of the Constitution,[5] it

---

**5.** Article I, section 9 states in part, "The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in cases of Rebellion or Invasion the public safety may require it."

seems to us that any uncertainty should be resolved in favor of the retained power of the district judge.

■ We also believe that Judge Battisti's construction of Rule 23(d) is consistent with the other subdivisions of the rule. Rule 23(a) provides:

Pending review of a decision in a habeas corpus proceeding commenced before a court, justice or judge of the United States for the release of a prisoner, a person having custody of the prisoner shall not transfer custody to another unless such transfer is directed in accordance with the provisions of this rule. Upon application of a custodian showing a need therefore, the court, justice or judge rendering the decision may make an order authorizing transfer and providing for the substitution of the successor custodian as a party.

An understanding of this portion of the rule, in the light of habeas corpus law generally, shows that it was designed in part to preserve the district judge's power over the physical custody of the petitioner by prohibiting the custodian from transferring custody of the prisoner to another, without the authorization of the "court, justice or judge rendering the decision." The language in no manner implies that any power to make that decision is lost or transferred to the appellate court because of the pendency of the appeal. *See* 9 Moore's Federal Practice ¶ 223.03 at 3505 (2d ed. 1975). If, therefore, authority is retained in the district judge to make this decision, it is difficult to argue that it was lost with respect to other immediate problems concerning custody by the filing of the notice.

■ Finally, one authority has indicated that the 1967 amendments to Supreme Court Rule 49, which is the source of the exact language in Rule 23, Fed.R. App.P., were in fact intended to ensure that a district court could make custody orders after a notice of appeal had been filed:

A group of amendments to the various paragraphs of Rule 49 makes it possible for the court or Justice or judge who has heard the habeas corpus application to issue *orders* respecting custody or enlargement of the prisoner pending appeal. Under the former provisions of Rule 49, once a notice of appeal was filed, such authority was vested *solely* in appellate courts or appellate judges or Justices.

B. Boskey & E. Gressman, "The 1967 Changes in the Supreme Court's Rules," 42 F.R.D. 139, 160 (1968) (emphasis added). The reference to "orders" respecting custody or enlargement pending appeal together with the deletion of the language of former Rule 49 convincingly demonstrates that the amendments were intended to retain in the district court power to issue orders respecting custody or enlargement of the petitioner at least until a party seeks a modification or change of such an order by motion in the court of appeals.[6]

Petition denied without prejudice to a motion by the state to revoke petitioner's bail for "special reasons".

---

6. It is not necessary for us to decide to what extent the "special reasons" language of Rule 23 affects any ordinary review powers of this court, but see in this regard *In re Johnson,* 72

S.Ct. 1028, 96 L.Ed. 1377 (Douglas, Circuit Justice, 1952), and *Aronson v. May,* 85 S.Ct. 3, 13 L.Ed.2d 6 (Douglas, Circuit Justice, 1964).