**Harllel B. JONES, Petitioner-Appellee Cross-Appellant,**

v.

**A. R. JAGO, Superintendent, Respondent-Appellant Cross-Appellee.**

**Nos. 77-3182 and 77-3183.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 7, 1977.

Decided May 3, 1978.

---

William J. Brown, Atty. Gen. of Ohio, Simon B. Karas, Columbus, Ohio, for petitioner-appellee cross-appellant.

Gary T. Kelder, Syracuse, Gordon S. Friedman, Cleveland, Ohio, Richard Aynes, Akron, Ohio, for respondent-appellant cross-appellee.

Before CELEBREZZE and ENGEL, Circuit Judges and GRAY, Senior District Judge.[*]

ENGEL, Circuit Judge.

This appeal presents an unusual question concerning the applicability of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and whether under those cases an eyewitness statement suppressed by the government can be exculpatory where it makes no reference to the defendant.

Harllel Jones was convicted in the Court of Common Pleas of Cuyahoga County, Ohio, of murder in the second degree and of shooting with intent to kill or wound. Having exhausted his state court remedies both in direct appeals and in collateral proceedings, Jones filed a petition for a writ of habeas corpus in the district court asserting nine separate reasons for his claim that his state conviction was void. Following a lengthy evidentiary hearing, the district court entered judgment granting the petition for habeas corpus and ordering that Jones be released unless he was retried within ninety days.[1] We summarize the facts developed at the evidentiary hearing only to the extent necessary to an understanding of the issue reached herein.[2]

On August 7, 1970, two shootings occurred in Cleveland resulting in the death of one John Howard Smith and the wound-

---

[*] Hon. Frank Gray, Jr., Senior Judge, United States District Court for the Middle District of Tennessee, sitting by designation.

[1] In connection with the judgment the district court released Jones pending appeal upon furnishing a $10,000 bond, 10% deposit. Our court upheld the district judge's authority to

grant a release in *Jago v. United States District Court,* 570 F.2d 618 (6th Cir. 1978).

[2] The district court properly held an evidentiary hearing, because there were inadequate factual findings upon which to make the determination of the *Brady* issue raised in the petition.

ing of one Harlow Tate. More than a year later, Jones was indicted for the offenses along with Marvin Bobo, Victor Harvey, James Moore, Donald Williams, and Robert Perry. The state did not allege that Jones had directly participated in the shooting, but charged that as the head of an organization called the "Afro Set," he called a "red alert" meeting of its members and ordered them randomly to shoot security guards and police officers in retaliation for the earlier fatal shooting of an Afro Set member. The state further claimed that at the same meeting Jones gave Victor Harvey a shotgun with which to carry out those instructions. In his defense, Jones denied ever having given any such instructions, having furnished the shotgun to Harvey, or having otherwise participated in the crimes. The evidence was sharply disputed.

At his trial the principal testimony against Jones was furnished by co-defendant Robert Perry, a member of the Afro Set, who had become a confidential government informant a few months before trial. It was Perry's testimony that the shootings were preceded by a meeting at the Afro Set headquarters presided over by Jones, and that among those present beside himself and Jones were the other defendants, including Victor Harvey, then 15 years old. Perry testified that Jones had supplied Harvey with a shotgun from his office. This testimony was corroborated by another Afro Set member, Kenneth Malone. For the defendant two other members of the same group testified that the entire retaliatory action took place without any authorization or knowledge on the part of Harllel Jones. One of them, Marvin Bobo, also testified that he, not Jones, had given Victor Harvey a shotgun from the trunk of his car.

While in detention at a juvenile home, Victor Harvey was questioned by local police officers and gave a statement, which related in detail his own participation and the participation of others in the shooting spree. However, it made no mention at all of any meeting at the Afro Set headquarters as later described by Perry. Instead Harvey stated that he heard of the killing of the Afro Set member while he was at their headquarters. Thereafter he went to a McDonald's restaurant with the others, and later they separated into two groups for the purpose of the shootings. His statement included the comment that he noticed a shotgun in the trunk of Marvin Bobo's car. There was no mention of Harllel Jones having furnished the gun to Harvey and, of course, the implication was that it came out of the trunk of Bobo's car. At the end of the statement, Harvey was asked if there was "anything else you can tell us about this murder?" He replied "No."

Prior to trial Victor Harvey was declared a material witness for the state and all charges against him were dismissed. Also prior to the trial, Jones' counsel made a timely demand to the prosecution that it produce all exculpatory statements in its possession, either written or oral, and specifically any statements which might have been given by Harvey. Without express mention of Harvey's statement, the court generally directed the prosecution to provide the defense with any exculpatory material. The prosecutor denied having any exculpatory evidence from Harvey or anyone else and did not turn over Harvey's statement. The petitioner never saw the written statement itself until it was produced during the habeas corpus proceedings in the federal district court.

Under the foregoing circumstances the district court held that the nondisclosure of Harvey's statement was a violation of Jones' right to due process under the Fourteenth Amendment as described in *Brady v. Maryland, supra, Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972), and more recently *United States v. Agurs, supra.* We agree.

Because the statement itself made no express reference to Harllel Jones, the state urges that it was neutral and hence not favorable to Jones. Whether evidence in written form is exculpatory or favorable is, we think, an issue of fact to be determined not merely from its contents but its significance in the light of all the attendant cir-

cumstances. Following a lengthy evidentiary hearing and extensive findings of fact, the district court concluded that Harvey's statement was exculpatory. That the statement itself made no reference to Harllel Jones himself is, of course, a factor carefully to be considered, but we do not deem it controlling, as the state would urge, in the context of the circumstances.

The evidence in the case showed that the Afro Set members had divided into two groups to go out and wreak their vengeance. Riding in the car that was involved in the shootings in question, Harvey was in a position to have knowledge concerning the involvement or non-involvement of Harllel Jones, and of course whether Jones had furnished him the shotgun.

The interest of defense counsel in whether the prosecution had a statement from Harvey was fully justified at the later evidentiary hearing in the district court. Jones and his counsel believed that Harvey, if called to testify at the state trial, would absolve Jones of any knowledge of or participation in the crimes, as did the two other witnesses.[3] Nevertheless, because Harvey had been declared a material witness and because the government had dismissed the charges against him, they were not at all certain of his reliability, especially if it developed that the statement actually incriminated Jones, as indeed, it had the other participants. The question was vital to the defense's decision as to whether to call Harvey. In his opinion, the district judge observed:

> But, in fact, the defense was restrained from using Harvey as a witness by the fear that Harvey had made a statement incriminating the petitioner. This fear was generated by the state's own actions—particularly its failure to disclose Harvey's statement—and certainly was not, under the circumstances, irrational. Despite the fact that Victor Harvey was a direct participant in the killing, the charges against him had been dropped

---

**3.** If Victor Harvey had testified at the trial as he did at the evidentiary hearing, and if his testimony was believed, it would indeed have been exculpatory:

> Q Victor, does this statement represent everything you told the police on that afternoon that you gave a statement, or morning, with your uncle present?
> A No.
> Q What is not in this statement, Victor, that you told the police when you made your statement?
> A They had asked me about an alert being called and a meeting.
> Q And what did you tell them? How did you answer that question?
> A No, there wasn't no alert that night.
> Q I'm sorry, did they ask you who called the alert?
> THE COURT: Call whom?
> MR. FRIEDMAN: An alert, your Honor.
> A Yes, they asked me had Harllel called an alert.
> Q Harllel who?
> A Jones.
> Q And what was your answer to that?
> A No.
> Q Did they ask you any other questions?
> A Did a meeting take place down on 55th at George's or the Casa Blanca.
> Q And what did you tell them to that?
> A No.
> Q And did they ask you any other questions that aren't in your report—statement?

> A They asked had any more cars went out that night.
> Q And what was your answer to that?
> A No.
> Q Did they ask you anything else that you can recollect or remember?
> A They asked me was Harllel Jones down on 55th that night.
> Q And what did you answer to that?
> A No.
> Q These are statements that you gave the police?
> A Yes.
> Q And you do not see it in your report?
> A No.
>
> \* \* \* \* \* \*
>
> Q One thing I would like to ask you about the incident that took place there: Where did you get the gun?
> A From Marvin Bobo.
>
> \* \* \* \* \* \*
>
> Q Is that the first time you ever saw that gun?
> A I believe so.
>
> \* \* \* \* \* \*
>
> Q Isn't it true that Harllel Jones gave you the gun at the Afro set?
> A No.
> Q And isn't it true that you put the gun into the trunk of Marvin Bobo's car?
> A No.

and he had been declared a material witness for the state. . . . Though Harvey was never called as a witness for the state, the risk that he had incriminated Jones in his statement to the police thus appeared to the defense counsel to be too great to allow him to take the stand.

In *Moore v. Illinois, supra,* the Supreme Court summarized the elements of the *Brady* rule:

The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence.

408 U.S. at 794–95, 92 S.Ct. at 2568.

In *United States v. Agurs, supra,* the Court noted a distinction in the materiality test between those cases in which specific information has been requested by the defense and those in which it has not:

The test of materiality in a case like *Brady* in which specific information has been requested by the defense is not necessarily the same as in a case in which no such request has been made. . . .
Before addressing that question, a brief comment on the function of the request is appropriate.

In *Brady* the request was specific. It gave the prosecutor notice of exactly what the defense desired. Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.

427 U.S. at 106, 96 S.Ct. at 2398 (footnote omitted).

We deem the foregoing language from *Agurs* to be controlling here. The defense specifically requested the information. The statement of an eyewitness to a crime which makes no reference even to the presence of the defendant or his participation must be viewed as a potentially powerful exculpation. Nor, as pointed out by Justice Stevens in *Agurs,* is it unfair to cast such a burden of evaluation upon the prosecutor where the request is timely and specific, especially where the prosecutor had to be aware of all of the attendant circumstances and of the importance of the testimony.

We need not decide what would have been the result had the prosecutor submitted the problem to the trial judge for resolution and had the trial judge, after an appropriate hearing, determined that the statement was not in fact exculpatory or favorable. Nor need we decide the impact of a similar decision in a post-conviction evidentiary hearing in the state court, as no findings were made on this issue. Nor need we find that the evidence was "obviously exculpatory," a standard we applied in *Wagster v. Overberg,* 560 F.2d 735, 739 (6th Cir. 1977), where there was merely a generalized request.

Following the guidance of *Agurs,* we conclude that the defense in specifically requesting the statement had a substantial basis for claiming both that it was exculpatory and for claiming that it was material. If Harvey obtained the shotgun from Marvin Bobo's trunk, there is at least a strong inference that he did not get it from Harllel Jones. If, as his statement indicated, he could tell the government agents nothing more about the murder than he had already revealed, there is at least a reasonable inference that Jones did not participate in the discussion with the other members leading to the shootings. It is true, as the state urges, that it could be inferred that Victor Harvey was simply being evasive or that he was lying. However, the duty to disclose favorable evidence cannot be so conditioned. That subjective evaluation was not for the prosecutor to make.

We need not determine here with finality whether the statement would have been admissible, although at least some applications come quickly to mind. The statement itself was hearsay without a doubt, but even hearsay evidence is admissible in the absence of objection. As found by the district judge, it is altogether likely that, armed with the knowledge of the contents of the statement, the defense would have called Victor Harvey. Had it done so, the statement might have been admissible as an exception to the hearsay rule for past recollection recorded or used for impeachment if Harvey became hostile and sought to implicate Jones when called to testify. We conceive under *Agurs* that the threshold of materiality is relatively low where a specific request is involved.

We readily recognize the burden which this ruling places upon the State of Ohio, by requiring a new trial so long after the event. Nevertheless, we do not know how the principles enunciated in *Brady* and *Agurs* can be otherwise preserved.

In view of our holding on the *Brady* issue, we need not reach the other issues raised on cross-appeal by the petitioner.

Affirmed.