**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kevin Elwood KRZYSKE, Defendant–Appellant.**

**Nos. 85–1760, 85–1799.**

United States Court of Appeals, Sixth Circuit.

Argued April 20, 1987.

Decided Sept. 21, 1988.

Josephine A. Chapman, Belleville, Mich., Aaron T. Speck (argued), Taylor, Mich., for defendant-appellant.

Karen Reynolds (argued), U.S. Atty., Detroit, Mich., Kathleen Nesi, for plaintiff-appellee.

Before MERRITT, WELLFORD and NORRIS, Circuit Judges.

**ORDER**

WELLFORD, Circuit Judge.

Pending before us now are a number of post-conviction motions by the appellant

Krzyske. On January 5, 1988, we affirmed defendant Krzyske's conviction of five counts of criminal income tax violations. *See United States v. Krzyske*, 836 F.2d 1013 (6th Cir.1988). He then filed a petition to rehear and for a rehearing en banc which was denied on March 9, 1988 with Judge Merritt dissenting.[1] On March 15, Krzyske filed a motion to stay the issuance of the mandate pending an application for certiorari to the United States Supreme Court. We granted a stay of 60 days on April 1, 1988. On April 13, 1988, Krzyske moved for a declaration that he was free to remain at large, despite the fact that his appeal had been resolved in favor of the government. Finally, on May 6, 1988, Krzyske filed an emergency motion for reconsideration of his case based on new evidence. These latter motions are the ones before us today.

Krzyske's principal grievance at this stage concerns bail. The trial judge sentenced Krzyske to a total term of five years imprisonment, fined him $20,000 and, pending appeal to this court, allowed him to remain on bond conditioned upon certain requirements for the "safety of others, and the community."[2] We set aside one of the conditions as a first amendment violation, but affirmed the others. Krzyske apparently failed to meet the other requirements (to file back tax returns and to pay past due taxes), and he was placed in custody.[3] By a subsequent order, however, we released him because we believed that he raised a substantial issue, "jury nullification," which might lead to reversal of his conviction. *See* 18 U.S.C. § 3143. Krzyske has remained free on bond since July 1987.

On April 6, 1988, following our affirmance of Krzyske's conviction, the government moved in the district court for revocation of defendant's bond because Krzyske's release no longer met the standard of 18 U.S.C. § 3143(b)(2). The government maintained that there no longer remained "a substantial question of law or fact likely to result in reversal or an order for a new trial even though the defendant was pursuing an application for writ of certiorari to the Supreme Court." The matter was referred to a magistrate in the Eastern District of Michigan who held a hearing on April 29, 1988. The magistrate concluded that the district court retained jurisdiction over conditions of defendant's release and that there was not "a substantial likelihood that the Supreme Court would grant certiorari," and consequently revoked the defendant's bond. Defendant was ordered to report to the Marshal's office for custody, but the revocation order was stayed for ten days pending an opportunity for Krzyske to appeal to the district court.

This prompted Krzyske's motion of April 13, 1988. In it he asked "for a redeclaration of our July 10, 1987 order" which had released him from custody pending disposition of his appeal on the merits. Krzyske argues that the magistrate's revocation of bond is "a usurpation of the jurisdiction of this court."

■ The magistrate relied principally upon *United States v. Sullivan*, 631 F.Supp. 1539 (E.D.Pa.), *aff'd without opinion*, 782 F.2d 1031 (3d Cir.1986), for his decision. In that decision, District Judge Katz decided affirmatively "the interesting issue of whether the District Court has jurisdiction to revoke bail after affirmance of a conviction by the Court of Appeals, but before the mandate of the appellate court is issued." 631 F.Supp. at 1540. In *Sullivan*, as in the instant case, defendant, who was free on bond, announced his intention to petition the Supreme Court for certiorari following appellate court affirmance of his conviction for income tax evasion, and persuaded the court of appeals to stay its mandate. The decision in *Sullivan* was "there is jurisdiction [in the district court

---

1. Krzyske also filed a petition for this court to appoint an appellate counsel for him. He had been represented in his appeal to this court.

2. Krzyske was known in that area of Michigan as a vocal "tax protestor," who encouraged others to join his cause.

3. In our prior opinion we noted that defendant had filed a petition for certiorari challenging the conditions of release imposed and affirmed by this court.

when] ... defendant's chances of obtaining review or reversal from the Supreme Court run from slim to none," and that therefore bail could be revoked. *Id.* at 1540.

Judge Katz made the following observations with which we are in agreement:

> The district court's authority in this matter does not stem from any lack of power on the part of the circuit court, whose jurisdiction attaches once a notice of appeal is filed. *United States v. Stanley,* 469 F.2d 576, 583 (D.C.Cir.1972) (and cases cited therein). Rather, the initial resolution of applications for release pending appeal have traditionally been committed to trial courts which are "the superior tribunal for the kind of information-gathering which a sound foundation for a bail ruling almost inevitably requires." *Id.* at 581–82; *United States v. Provenzano,* 605 F.2d [85,] 91 [(3d Cir.1979)].

*Sullivan,* 631 F.Supp. at 1541. We note a distinction in *Sullivan* that the defendant had not appealed from a detention order issued by the district court, as has Krzyske, but we believe the distinction is immaterial.

*Sullivan* relied upon *United States v. Black,* 543 F.2d 35 (7th Cir.1976), which also held that a district court had jurisdiction to revoke an appeal bond. In *Black* the defendant had appealed his conviction for making and filing a false statement. After his conviction had been affirmed, but more than two months before the mandate of the appellate court had been received in the district court, the district court decided to revoke bond because it was apparent that Black would not be successful on appeal. The Seventh Circuit observed:

> The filing of a notice of appeal, although transferring jurisdiction over the case from the district court to the Court of Appeals, does not render the district judge powerless or without jurisdiction to enforce the conditions of a bond under which defendant has been released pending appeal. The court retains jurisdiction over the person of the defendant at least for the limited purposes of reviewing, altering or amending the conditions

under which that court released the defendant, and is empowered to revoke or forfeit the defendant's bond during the pendency of an appeal for any of the reasons which would have supported an initial denial of the defendant's application for release. In view of the fact that, during the pendency of an appeal, facts may come to light which render it advisable for the district court to alter the conditions upon which defendant has been released, or to revoke his bond altogether, the same statute which explicitly empowers the district court to impose conditions upon release pending appeal, implicitly empowers the court to make such adjustments in those conditions as circumstances may necessitate.

*Black,* 543 F.2d at 37, *see also United States v. Catino,* 562 F.2d 1, 4 (2d Cir. 1977). This reasoning has equal force when an appellate court has previously upheld defendant's release. As circumstances may change, the district court is best equipped to respond to such changes.

We need not be overly concerned about district court usurpation of our authority when it is obvious, as here, that the factors motivating our decision to grant bail no longer exist. We are also guided in this respect by a previous decision of our court. In *Jago v. United States District Court,* 570 F.2d 618 (6th Cir.), *aff'd,* 575 F.2d 1164, *cert. denied,* 439 U.S. 883, 99 S.Ct. 223, 58 L.Ed.2d 196 (1978), we affirmed the action of a district judge who ordered release on bail of a state habeas corpus prisoner applicant while an appeal was pending in this court. The state was appealing the district court's previous decision declaring a state murder conviction invalid. The district court had denied the state's motion for a stay of execution of that judgment pending appeal and, significantly, this court had then entered a stay upon the state's petition. *Id.* at 619. Despite this court's stay of the district court's judgment pending appeal on the merits, we held the district court nevertheless retained jurisdiction over questions of custody, noting "[a] similar responsibility for custody decisions is reserved in the district court for direct criminal appeals by the express provisions

of Rule 9(b), Federal Rules of Appellate Procedure." *Id.* at 623. This recognition of retained custodial authority of the district court in a habeas corpus action is applicable to the situation we have here, and is in accord with the result in *Sullivan* and *Black*.

■ A circuit judge or the Supreme Court itself may decide motions for release from custody by defendant-appellants pending disposition of appeals or of petitions for certiorari, and Fed.R.App.P. 9(b) calls for prompt decisions on such motions. *See Truong Dinh Hung v. United States,* 439 U.S. 1326, 99 S.Ct. 16, 58 L.Ed.2d 33 (1978); *Mecom v. United States,* 434 U.S. 1340, 98 S.Ct. 19, 54 L.Ed.2d 49 (1977); *Harris v. United States,* 404 U.S. 1232, 92 S.Ct. 10, 30 L.Ed.2d 25 (1971); *United States v. Provenzano,* 605 F.2d 85, 92, 93 (3d Cir.1979). Defendant Krzyske then has available to him the remedy which he has pursued by an emergency motion to this court to order his continued release on bond, and he also has available the remedy of seeking bail relief from the Supreme Court in connection with his petition for certiorari.

■ Our decision affirming the district court's judgment and sustaining the convictions of Krzyske on the merits, and in denying the petition for rehearing or rehearing en banc settled the chief issue of jury nullification in favor of the government. Unless or until the Supreme Court should take some action to the contrary, and statistical studies have shown slight likelihood that the Court will undertake such action on petitions for certiorari, there is no logical reason for Krzyske to remain free.

We find no basis for granting Krzyske's motion to reconsider rehearing his appeal based upon new evidence. We likewise now deny his motion staying any action on his bond pending United States Supreme Court review. We find that Krzyske has failed to meet the requisites for continued release under 18 U.S.C. § 3143. We decline his motion to declare that our prior order of July 10, 1987 has any continued effect in light of the subsequent actions taken by us on the merits of the appeal and on the several motions for bail and continued custody filed by Krzyske.

We express no opinion on the merits of any subsequent appeal by Krzyske from the most recent revocation orders of the district court or of Magistrate Pepe.

MERRITT, Circuit Judge, dissenting.

I dissent both from the majority's treatment of the bond issue and from its denial of reconsideration of the jury-nullification issue.

I.

After a decision on the merits affirming defendant's conviction but before our mandate issued, the magistrate below revoked defendant Krzyske's bond on appeal on the ground that he would not raise in his petition for certiorari in the Supreme Court a "substantial" ground for reversal or new trial within the meaning of 18 U.S.C. § 3143(b)(2). I would treat defendant's emergency pro se motion for an "order staying bond" as a petition for mandamus, hold that the magistrate's order was void as taken without jurisdiction, and order defendant's bond on appeal reinstated until the issuance of the mandate of our merits decision.

The defendant was convicted of three counts of failing to file a tax return and one count of tax evasion. Following his conviction, the District Court imposed several conditions upon his release pending appeal, including restrictions on his speech (other than to his attorney) and requirements that he pay the taxes owed. Acting upon pre-argument motions by the defendant to modify the conditions of his release and by the Government to revoke his bond, on July 10, 1987 we issued an order that eliminated the conditions as constituting a prior restraint on his speech and as more appropriate as conditions of release pending appeal. In that same order, we overruled the Government's motion for revocation of bond, finding that there was "at least one substantial and serious issue raised on this appeal" and ordering the

defendant released under the bond set by the District Court "pending our further decision on the merits of this appeal."

On January 5, 1988, by a 2–1 vote we affirmed the District Court's judgment of conviction; I dissented on the issue of jury nullification. *See United States v. Krzyske*, 836 F.2d 1013 (6th Cir.1988). On March 9, 1988, defendant's petition for rehearing en banc was denied. On April 1, we granted his subsequent motion to stay the mandate for 60 days. On April 6, the Government moved in the District Court to revoke defendant's bond on the sole ground that his grounds for appeal no longer met the statutory criterion that "the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial." 18 U.S.C. § 3143(b)(2). Relying on *United States v. Sullivan*, 631 F.Supp. 1539 (E.D.Pa.1986), and two appellate cases from other circuits cited therein, Magistrate Pepe concluded on April 29 that, although this Court had stayed the mandate, the District Court nevertheless retained jurisdiction "over bond conditions" and that this Court's previous ruling on the "substantiality test" of § 3143(b) was superseded by the "relevant intervening factors" of the Sixth Circuit's actions on the merits and on the petition for rehearing en banc. The magistrate then independently concluded that there was not a "substantial likelihood that the Supreme Court would grant certiorari" and revoked defendant's bond. The District Court later affirmed, holding that "[a]t no point has the Sixth Circuit stated, explicitly or implicitly, that it was assuming jurisdiction over the bond matter."

It is settled law that the filing of a timely and sufficient notice of appeal transfers jurisdiction from the district court to the court of appeals with respect to any matters involved in the appeal (except "in aid of the appeal" or to correct clerical errors under Fed.R.Civ.P. 60(a)) until the district court receives the mandate of the court of appeals. *See In re Thorp*, 655 F.2d 997 (9th Cir.1981); *Jago v. United States District Court*, 570 F.2d 618 (6th Cir.1978); *United States v. Black*, 543 F.2d 35 (7th Cir.1976); *see generally* 9 *Moore's Federal Practice* § 203.11.

It is also true that the District Court is empowered in the first instance to set the conditions of release on appeal and that during appeal that court retains jurisdiction to review or alter those conditions in view of changed circumstances. *See United States v. Black*, 543 F.2d at 37.

Whatever distinctions may be drawn about whether a given matter is a matter involved in the appeal or in aid of the appeal, *see Jago*, 570 F.2d at 622–23, 625–26, it is clear in this case that the matter of Krzyske's bond had been specifically ruled on during the pendency of this appeal and for the duration of our appellate jurisdiction. By contrast, in *Sullivan*, upon which the magistrate erroneously relied, there was no issue of bond on appeal and the district court's holding was:

> My reading of the law is that *unless the defendant is specifically appealing a detention order*, I retain jurisdiction of the case, so far as release or detention issues are concerned.

631 F.Supp. at 1546 (emphasis added). The magistrate, district court, and a majority of this court obviously overlook the emphasized language.

By the terms of our previous orders on July 10, 1987 and April 1, 1988, our jurisdiction over the bond issue persists until the mandate issues. Accordingly, the magistrate's action was without jurisdiction and therefore void until issuance of the mandate 60 days following April 1. The defendant's previous bond should have been ordered reinstated. I do not agree with the interpretation of "substantial question" in § 3143(b) adopted in *United States v. Pollard*, 778 F.2d 1177 (6th Cir.1985), but it is *stare decisis* in this Circuit. Accordingly, I do not dissent on this ground but limit my dissent on the bond issue to the jurisdictional question. However, in either area, we should not be so cavalier about detention, even when the liberty in question is that of a convicted defendant. The 1984 Bail Reform Act certainly indicated a Congressional inclination to toughen standards

for bond; it is not a license to abandon the rule of law.

## II.

Defendant also seeks to have us reconsider our earlier decision in light of an affidavit he submits that was obtained after trial from one of the jurors.

At trial, the District Court permitted Krzyske to mention in his closing argument to the jury that the doctrine of jury nullification should apply. The jury subsequently interrupted its deliberations to ask the Court, "What is jury nullification?" The trial court responded:

> There is no such thing as valid jury nullification. Your obligation is to follow the instructions of the Court as to the law given to you. You would violate your oath *and the law* if you willfully brought in a verdict contrary to the law given you in this case. (Emphasis added).

The majority of our Court affirmed, distinguishing between the nullification *power* a jury "may ... have ... to ignore the law," which it recognized, and the duty of the jury to apply the law declared applicable by the judge. Thus, the majority concluded that the jury had no right to an instruction on its power, even upon request. I believed then and I believe now that the majority's affirmance of the trial judge's action is contrary to one of the most cherished principles embedded in our system of justice.

There is little doubt that juries have the power to "nullify" the law by returning an acquittal "in the teeth of both law and facts." *Horning v. District of Columbia,* 254 U.S. 135, 138, 41 S.Ct. 53, 54, 65 L.Ed. 185 (1920) (Holmes, J.) (dictum). Although there was a period in the late 19th century when it appeared that the Supreme Court had departed from this ancient principle of our common-law heritage, *see Sparf v. United States,* 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895), in this century virtually all courts seem to have returned to the traditional view. *See, e.g., Duncan v. Louisiana,* 391 U.S. 145, 156, 88 S.Ct. 1444, 1451, 20 L.Ed.2d 491 (1968) ("common-

sense judgment of a jury" and "community participation in the determination of guilt or innocence" are "defense against arbitrary law enforcement"); *United States v. Dougherty,* 473 F.2d 1113 (D.C.Cir.1972) (both majority and dissent agreeing that jury has nullification power); *see generally* Kadish & Kadish, *Discretion to Disobey* (1973); H. Kalven & H. Zeisel, *The American Jury* (1966). As the most recent exhaustive review of this subject concludes: "The only real issue concerning jury nullification is whether or not the jury should be honestly instructed as to its authority. The value of nullification to the legal system no longer appears to be a matter of dispute." Scheflin & Van Dyke, *Jury Nullification: The Contours of a Controversy,* 43 L. & Contemp.Probs. 51, 113 n. 55 (1980) (hereinafter *Jury Nullification* ).

This is not a case in which it is necessary to decide the broad question of whether a jury, before it retires, should invariably be told of its nullification power, or should be told only in selected instances. This case rather presents the question whether a deliberating jury, itself contemplating the exercise of that power, upon inquiry about its power can be told that to "willfully" use that power would "violate ... the law."

At the point this issue arose, the power to acquit had passed into the hands of the jury. Even if one were to concede that a jury should not routinely be instructed on nullification before retirement, a different situation altogether is presented when a deliberating jury (or for that matter, a jury at any point) makes a positive inquiry as to its power.

Moreover, in this case the actual instruction given conveyed a sense of threat to the jurors that a nullification verdict "willfully" taken would "violate ... the law" and, by implication, invite sanctions.

That threat was contrary to the venerable rule to the contrary established in the London prosecution of William Penn more than three centuries ago. After several months of incarceration, the jurors who had refused to follow a judge's instruction that they convict Penn were vindicated.

*See Bushell's Case,* 124 Eng.Rep. 1006 (C.P.1670); *Penn & Mead's Case,* 6 Howell's State Trials 951 (London 1816) (1st ed. London 1783). British efforts to avoid colonial juries thereby emboldened constituted one of the grievances that led to the Declaration of Independence. *See Jury Nullification,* 43 L. & Contem.Probs. at 56–58.

The sworn affidavit of a juror submitted to us now by defendant Krzyske reports the jurors' reaction to the warning given them by the district judge:

.    .    .    .    .

2. On June 25, 1985 we jurors asked the trial judge, Charles W. Joiner, during the first day of deliberations and before any verdicts were returned, the following question:
"WHAT IS JURY NULLIFICATION?"
3. This question was in the form of a note to the judge, and it was asked because we were very inquisitive as to its meaning.
4. When the trial judge responded by saying "There is no such thing as valid jury nullification", we were left very confused.
5. After the trial was over, I learned what jury nullification was because I was still in doubt over its meaning as the trial was concluding.
6. If we were told the truth about jury nullification a different outcome would have resulted in favor of the defendant, Kevin Elwood Krzyske, because I (for one) would have voted for "acquittal" on all counts of the indictment.

In these circumstances, I am reinforced in my belief that the instruction given to the jury deprived the defendant of his Sixth Amendment right to trial by jury. I dissent.