**Harllel B. JONES, Plaintiff-Appellant,**

v.

**Robert SHANKLAND, et al., Defendants-Appellees.**

No. 84–3623.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 7, 1985.

Decided Sept. 2, 1986.

Rehearing and Rehearing En Banc Denied Oct. 20, 1986.

Richard L. Aynes, argued, Appellate Review Office School of Law, University of Akron, Akron, Ohio, Gary T. Kelder, College of Law, Syracuse University, Syracuse, N.Y., Theodore E. Meckler, Cleveland, Ohio, for plaintiff-appellant.

Colleen C. Cooney, Asst. County Prosecutor, Thomas P. Gill, argued, Kathleen Ann Sutula, George J. Sadd, Patrick McLaughlin, argued, U.S. Atty., Dale Kainski, argued, John D. Maddox, Robert M. Wolff, Asst. Director of Law, Cleveland, Ohio, for defendants-appellees.

Before ENGEL, MERRITT and KENNEDY, Circuit Judges.

ENGEL, Circuit Judge.

Harllel B. Jones appeals a judgment of the United States District Court for the Northern District of Ohio, granting defendants' motions to dismiss and for summary judgment in his civil rights action. In this appeal, Jones contends that the district court erroneously held that his claims against four defendants were barred by the applicable statute of limitations and that the remaining county defendants were absolutely immune from civil suit. We affirm.

A complete recital of events which brought about Jones' conviction of second degree murder in the Ohio state courts and his ultimate release upon issuance of a federal writ of habeas corpus is chronicled in *Jones v. Jago*, 428 F.Supp. 405 (N.D.Ohio 1977), *aff'd*, 575 F.2d 1164 (6th Cir.), *cert. denied*, 439 U.S. 883, 99 S.Ct. 223, 58 L.Ed.2d 196 (1978); and *Jago v. United States District Court*, 570 F.2d 618 (6th Cir.1978).

## I.

On October 12, 1971, Harllel Jones was arrested and held to answer an indictment charging him with first degree murder and shooting with intent to kill. The state maintained that Jones had instigated the fatal shootings of two men on August 7, 1970, in retaliation for the death of a member of a political group which he had organized. On March 28, 1972, a jury convicted Jones of second degree murder and of shooting with intent to kill or wound. After exhausting his state remedies, Jones filed a petition for habeas corpus in the federal court in Cleveland charging, among other constitutional errors, that the prosecution had unconstitutionally suppressed exculpatory evidence.

During Jones' prosecution the state had refused to disclose a statement which the defense specifically requested. That statement, by a fifteen year old juvenile who had been present at the August 7 shootings, contained that person's recollections of that evening but made no mention of any involvement on the part of Jones. On February 10, 1977, the district court granted Jones' writ. *Jones v. Jago*, 428 F.Supp. 405 (N.D.Ohio 1977), and on June 24, 1977, Jones was released from prison on bond. On February 2, 1978, the Sixth Circuit rejected the prosecution's appeal of Jones' release, *Jago v. U.S. District Court, Northern District of Ohio, East Division, at Cleveland*, 570 F.2d 618 (6th Cir.1978), and on May 3, 1978, the Sixth Circuit affirmed the district court's decision granting

a conditional writ of habeas corpus, *Jones v. Jago,* 575 F.2d 1164 (6th Cir.1978). The state's petition for a writ of certiorari was denied by the United States Supreme Court on October 2, 1978. *Jago v. Jones,* 439 U.S. 883, 99 S.Ct. 223, 58 L.Ed.2d 196 (1978). Finally, on February 12, 1979, the district court entered a "final" order unconditionally releasing Jones, the state having determined not to retry him.

On October 29, 1979, Jones filed a civil action in the United States District Court under 42 U.S.C. §§ 1983, 1985(2) and (3) and 1986. He alleged that the earlier prosecution violated his rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth, Thirteenth, Fourteenth and Fifteenth Amendments. He also alleged pendent state claims of false imprisonment, intentional infliction of emotional distress, malicious prosecution, abuse of process, invasion of privacy and defamation. Jones named eleven defendants. Three defendants, Robert Shankland, Thomas Mahon and James Fuerst, were officers of the police department of the City of Cleveland and were sued individually. Defendants William H. Greene, Jr. and William Kelley were each agents of the Federal Bureau of Investigation assigned to the Cleveland Field Office of the FBI. Greene and Kelley were sued individually. Robert Perry was alleged to be an undercover agent who worked for the Federal Bureau of Investigation as an informant. He was sued individually. Defendants John T. Corrigan, Robert E. Feighan and William J. Coyne were all employed by Cuyahoga County. Corrigan was the duly elected prosecutor for the county. Feighan and Coyne were assistant Cuyahoga County prosecutors. Corrigan, Feighan and Coyne were sued in both their individual and official capacities. Also named were the "Cuyahoga County Prosecutor's Office" and Defendant Cuyahoga County, the "Parent-Governmental" entity of the Cuyahoga County Prosecutor's Office. The liability of the prosecutor's office and the county was alleged to be "predicated upon the actions of defendant Corrigan."

Jones' lengthy complaint alleged that the named defendants acted either solely or in conspiracy to infringe his First Amendment rights, failed to disclose exculpatory information, procured false testimony, failed to correct perjured testimony, caused a conflict of interest for defense counsel and then did not disclose that conflict to Jones, put a "spy" in the defense camp and "covered up" the foregoing allegedly unconstitutional actions.

On July 2, 1984, Chief Judge Frank J. Battisti granted the city and federal defendants' motions to dismiss and a motion for summary judgment which had been filed by the county defendants. He held that Jones' claims against the city and federal defendants were governed by the one-year statute of limitations contained in Ohio Rev.Code § 2305.11. Concluding that Jones' cause of action accrued at the very latest on October 2, 1978, when the Supreme Court denied certiorari, Judge Battisti found the suit time-barred. While Judge Battisti also concluded that the county defendants had waived the statute of limitations defense by not raising it in their pre-answer motion to dismiss, he nonetheless granted the county defendants' motion for summary judgment on the ground that they were entitled to absolute immunity for their actions in prosecuting the criminal case.

On appeal, Jones contends that the district court should have examined each claim made to determine which Ohio statute of limitations provision should have been applied. He argues also that his cause of action did not accrue until February 12, 1979, when the district court granted an unconditional writ or thirty days thereafter when the state's right to appeal that order expired. Moreover, he claims that the statute of limitations was tolled by Ohio Rev.Code § 2305.16 because although physically free since June 24, 1977, he had remained constructively "imprisoned" under the restrictions of bail until the issuance of the unconditional writ. Finally, he argues that the county defendants were not immune from suit.

## II.

We first conclude that Chief Judge Battisti was entirely correct in his determination that the individual county prosecutors were absolutely immune from personal liability in damage suits brought pursuant to 42 U.S.C. § 1983. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

Jones argues that many of the claims charged against those in the prosecutor's office relate to their role as administrator or investigative officers, rather than as advocates. His complaint contains essentially allegations of failing to disclose exculpatory and other information concerning witnesses, procuring false testimony, failing to correct perjured testimony, causing a conflict of interest for defense counsel, not disclosing that conflict to Jones, putting a "spy" in the defense camp, and "covering up" those allegedly unconstitutional actions.

■ The foregoing actions appear to us to be clearly within the scope of immunity contemplated by the Supreme Court in *Imbler.* The use of perjured testimony and the non-disclosure of exculpatory information are certainly entitled to absolute immunity. *See Imbler,* 424 U.S. at 431 n. 34, 96 S.Ct. at 995 n. 34. The conflict of interest problems and the spy allegations would also seem to be related to the acts of an advocate and thus come within the area of prosecutorial immunity as do the cover up allegations which merely appear to be re-statements of the prosecution's claimed failure to disclose exculpatory information.

## III.

■ The trial judge's determination that Jones' claims against the remaining defendants were governed by Ohio's one-year statute of limitations as contained in Ohio Rev.Code § 2305.11 has since been fully reaffirmed by the Supreme Court's determination in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), that actions under section 1983 are best characterized as personal injury actions and subject to the state statutes of limitations for those types of claims. While there are two conceivable statutes of limitations in Ohio bearing on personal injury claims, one for negligent claims and one for intentional claims, our court in *Mulligan v. Hazard,* 777 F.2d 340 (6th Cir.1986), has recently held, consistent with Judge Battisti's ruling here, that the one-year limitations period of Ohio Rev.Code § 2305.11 is more appropriate. We agree and accept *Mulligan v. Hazard* as *stare decisis* in our circuit on the question of Ohio's most nearly analogous statute. *Mulligan v. Hazard* is also authority in our circuit that *Wilson v. Garcia* is to be applied retroactively, dispelling any question of the applicability of the one-year period to the present case.

## IV.

■ Having found that the one-year statute is applicable, the question remains whether Jones' civil rights action, which was commenced in the district on October 29, 1979, was nevertheless timely as having been commenced within one year from the time it accrued. In support of this claim, it is argued that the statute should not begin to run until February 12, 1979, the date on which the court entered a "final" order unconditionally releasing Jones after the state determined not to retry him. We disagree.

In support of the latter position, Jones claims first that accrual of his cause of action was tolled by his imprisonment. Under Ohio Rev.Code § 2305.16, "If a person entitled to bring any action mentioned in such sections [including section 2305.11], unless for penalty or forfeiture, is at the time the cause of action accrues, ... imprisoned ... such person may bring it within the respective times limited by such sections after such disability is removed...."

In actions brought under section 1983, state tolling statutes apply where the most nearly analogous state statute of limitations is borrowed, to the extent that the tolling provisions are not inconsistent with federal policy underlying section 1983. *Board of Regents of the University of the*

*State of New York v. Tomanio,* 446 U.S. 478, 484–85, 100 S.Ct. 1790, 1795–96, 64 L.Ed.2d 440 (1980); *see also Austin v. Brammer,* 555 F.2d 142 (6th Cir.1977). It is undisputed, however, that Jones was physically free from restraint since his release on June 24, 1977. *Jago v. United States District Court,* 570 F.2d 618, 619 n. 1 (6th Cir.1978). We are cited no authority in Ohio's courts or otherwise to the effect that the statutory period was nevertheless still tolled because thereafter and until final release on February 12, 1979, Jones was under the "restraint" of bail.

■ Jones has supplied no support for his proposition that the disability of imprisonment referred to in section 2305.16 includes time spent on bail and logic does not support such a claim. The concerns prompting the tolling of a statute while one is in prison simply are not applicable when the party is free on bail. He is thereafter not denied any access to counsel, nor is he hindered from investigating the facts concerning his claim or from starting suit on his own behalf. *Accord Kaiser v. Cahn,* 510 F.2d 282 (2d Cir.1974).

Finally, Jones claims that the statute of limitations could not begin to run nor could his cause of action accrue until there had been a full termination of his habeas corpus proceedings, relying primarily upon *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). There Justice Stewart held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus," 411 U.S. at 500, 93 S.Ct. at 1841, and not an action under 42 U.S.C. § 1983. While the Court found that to allow a section 1983 suit to proceed in cases challenging the propriety of a state prisoner's incarceration would frustrate the congressional intent reflected in the habeas statutes, it restricted its holding to cases seeking only equitable relief. In this action, of course,

only damage relief is sought by Jones, although it is for deprivations which arose not from the conditions of his confinement, but from allegations going to the constitutionality of the proceedings which led to his incarceration. Nonetheless, the trial court recognized that exhaustion of remedies is not a prerequisite to a section 1983 action. The prisoner in *Preiser* had argued that the court's holding could deprive them of any opportunity to receive damages if no damage remedy was available at state law. They based their argument upon the principles that damages are not available in federal habeas corpus proceedings, and that a subsequent section 1983 could be barred by *res judicata* if the state court determination is adverse to their claims. The Court responded:

> The answer to this contention is that the respondents here sought no damages, but only equitable relief—restoration of their good-time credits—and our holding today is limited to that situation. If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release—the traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus is *not* an appropriate or available federal remedy. Accordingly, as petitioners themselves concede, a damages action by a state prisoner could be brought under the Civil Rights Act in federal court without any requirement or prior exhaustion of state remedies. Cf. *Ray v. Fritz,* 468 F.2d 586 (CA2 1972).

411 U.S. at 494, 93 S.Ct. at 1838. The Court further noted that a suit for damages under section 1983 and a habeas claim may be pressed simultaneously in federal court:

> If a prisoner seeks to attack both the conditions of his confinement and the fact or length of that confinement, his latter claim, under our decision today, is cognizable only in federal habeas corpus,

with its attendant requirement of exhaustion of state remedies. But, consistent with our prior decisions, that holding in no way precludes him from simultaneously litigating in federal court, under § 1983, his claim relating to the conditions of his confinement.

*Id.* at 499 n. 14, 93 S.Ct. at 1841 n. 14.

In *Wolff v. McDonnell,* 418 U.S. 539, 553–55, 94 S.Ct. 2963, 2973–74, 41 L.Ed.2d 935 (1974), the Supreme Court interpreted this language in *Preiser,* concluding that a section 1983 suit for damages may be litigated outside a habeas proceeding. In *Wolff,* like *Preiser,* a state prisoner alleged that he and others had been unconstitutionally disciplined and thereby deprived of "good time" credit. However, unlike the plaintiff in *Preiser,* the plaintiff in *Wolff* sought declaratory relief and money damages as well as an injunction. The Supreme Court held that the injunctive relief sought was foreclosed, as in *Preiser,* but that the declaratory judgment and damage claims could proceed:

> *Preiser* expressly contemplated that claims properly brought under § 1983 could go forward while actual restoration of good-time credits is sought in state proceedings. 411 U.S. at 499 n. 14, 93 S.Ct. at 1841 n. 14. Respondent's damages claim was therefore properly before the District Court and required determination of the validity of the procedures employed for imposing sanctions, including loss of good time, for flagrant or serious misconduct. Such a declaratory judgment as a predicate to a damages award would not be barred by *Preiser*
> . . . .

We therefore conclude that it was proper for the Court of Appeals and the District Court to determine the validity of the procedures for revoking good-time credits and to fashion appropriate remedies for any constitutional violations ascertained, short of ordering the actual restoration of good time already canceled.

418 U.S. at 554–55, 94 S.Ct. at 2973–74 (footnotes omitted).

While the language in *Wolff* could be read as holding that a section 1983 suit for damages may be brought even if the damage claim is dependant upon the constitutionality of the prisoner's confinement, the Supreme Court recently acknowledged that it has not yet determined whether "a Federal District Court should abstain from deciding a § 1983 suit for damages stemming from an unlawful conviction pending the collateral exhaustion of state-court attacks on the conviction itself." *Tower v. Glover,* 467 U.S. 914, 923, 104 S.Ct. 2820, 2826, 81 L.Ed.2d 758 (1984).

In *Hadley v. Werner,* 753 F.2d 514 (6th Cir.1985), a panel of our court followed the decision of the First Circuit in *Guerro v. Mulhearn,* 498 F.2d 1249 (1st Cir.1974), by holding that in a section 1983 suit a federal court must "stay its hand where disposition of the damage action would involve a ruling implying that a state conviction is or would be illegal." 753 F.2d at 516 (quoting *Guerro,* 498 F.2d at 1252). Our circuit in *Hadley,* concluding that the reasoning of *Preiser* combined with the policy considerations underlying *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), required the district court to stay its hand "where disposition of the damage action would involve a rule implying that a state conviction is or would be illegal," 753 F.2d at 516, and ordered as specific relief in that case the vacation of the district court's ruling that the plaintiff there had failed to state a claim upon which relief could be granted. At the same time, it affirmed the district court's dismissal of Hadley's claim, without prejudice however to his opportunity to refile his claim under section 1983 if and when he established through a writ of habeas corpus that he was denied a constitutional right. The specific relief accorded in *Hadley* would normally raise some question whether, therefore, the accrual of a petitioner's cause of action for damages based upon constitutional violations which also affected his liberty, would be suspended during the entire time necessary to pur-

sue the habeas action to a successful conclusion. In other contexts, however, the Supreme Court in *Fornaris v. Ridge Tool Co.*, 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970), and our circuit in *Muskegon Theatres, Inc. v. City of Muskegon*, 507 F.2d 199 (6th Cir.1974), held it error to have dismissed outright, even without prejudice, causes of action brought under the Civil Rights Act where it was determined that abstention pending the resolution of state proceedings was appropriate. There is support and logic for support in both views. We need not, however, decide here whether a dismissal without prejudice or the retention while abstaining from action is preferable for we determine that in all events the habeas corpus case had been fully concluded more than one year before the suit was started.[1]

As noted by the district court, the Supreme Court denied certiorari on October 2, 1978; on October 16, 1978, Justice Stewart refused to suspend the denial of the application for writ of certiorari. Without necessarily holding that the one year period should be calculated as running from either of those dates in contrast to some earlier date, it is sufficient to say that under any reasonable construction of finality, Jones had had well over a year in which to act before commencing the district court suit on October 29, 1979. The district court's order of February 12, 1979, in final conclusion of the habeas proceedings, was nothing more than an administrative act of closing the file. The result had already been fully and totally adjudicated. We see no reason to string out the time for the statute to run by conceiving of every possible method by which the ultimate result in the habeas case might have been forestalled.

AFFIRMED.

---

1. *See also Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), where, in a different context, the Court held that commencement of agency proceedings under Title VII, 42 U.S.C. §§ 2000e, *et seq.,* did not toll the limitations period for a claim brought under 42 U.S.C. § 1981 challenging the same conduct. The Court suggested as a possible solution "that the plaintiff in his § 1981 suit may ask the court to stay proceedings until the administrative efforts at conciliation and voluntary compliance have been completed." 421 U.S. at 465, 95 S.Ct. at 1722.